IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HAMID IHSAN, §
§
Plaintiff, §
§
v. § CIVIL ACTION NO. H-17-2546
§
WEATHERFORD U.S., LP, §
§
Defendant. §

### MEMORANDUM OPINION AND ORDER

Plaintiff, Hamid Ihsan, brings this action against defendant, Weatherford U.S., LP, asserting claims for employment discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981-1988 ("§ 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq. ("Title VII"), and Texas Commission on Human Rights Act, Texas Labor Code §§ 21.051(1) and 21.055, based on race (South-Asian), color (darker skin color), national origin (Pakistani-born), and religion (Muslim).[1] Pending before the court is Defendant's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 21), and Defendant's Motions in Limine (Docket Entry No. 28). For the reasons set forth below, Defendant's MSJ will be granted, Defendant's Motions in Limine will be denied as moot, and this action will be dismissed with prejudice.

---

[1]Original Complaint and Jury Request ("Original Complaint"), Docket Entry No. 1, p. 2 ¶ 7.

# I.  Undisputed Facts

Defendant is a multinational company servicing the oil and gas industry.[2]  In October or November of 2014 defendant's Product Line Engineering Manager, Michael Jahn, interviewed plaintiff for the position of Mechanical Engineer III at defendant's facility in Kingwood, Texas.  Following the interviews, Jahn recommended that plaintiff be hired.  Defendant hired plaintiff, and plaintiff began working as a Mechanical Engineer III reporting to Jahn in January of 2015.[3]

Plaintiff's on-the-job training for his position as Mechanical Engineer III consisted of time that Jahn gave him to complete online training courses and modules related to defendant's product lines, use of defendant's internal database (Windchill) and design software (Creo), and hands-on training provided by other engineers under Jahn's supervision.[4]

On May 15, 2015, Jahn sent plaintiff an email with performance objectives that included a directive to increase his knowledge of Windchill by looking into the training courses again and learning to complete work on his own, reminding him that he needed to

---

[2]Declaration of Pamala Barrick ("Barrick Declaration"), Exhibit A to Defendant's MSJ, Docket Entry No. 21-2, p. 1 ¶ 3.

[3]Id. ¶ 4; Oral and Videotaped Deposition of Hamid Ihsan ("Plaintiff's Deposition"), pp. 86:1-20, 101:18-102:13, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 3-5.

[4]Plaintiff's Deposition, pp. 109:8-112:13, 116:11-119:19, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 8-15.

complete his assignments in a timely fashion, and advising him to complete conceptual layouts with raw drawings and waiting to work out the details until after the conceptual layout has been approved.[5]

On or about May 28, 2015, Jahn met with plaintiff to explain that draft drawings had to be produced quickly in response to customer requests, and that details would be investigated and finalized only if the customer accepted the draft drawings.[6] After this meeting plaintiff understood that Jahn believed there were areas in which his job performance needed improvement.[7]

On June 23, 2015, Jahn placed plaintiff on a Performance Improvement Plan ("PIP"), and reviewed with plaintiff in the presence of the defendant's Human Resources Manager, Jodi Andersen, the performance expectations outlined in the PIP. The PIP outlined several areas of improvement, including the plaintiff's need to improve the timeliness of his work, his ability to multitask, and his need not to get caught up on details during a project's initial

---

[5]Id. at 129:24-130:21, 134:14-140:13, pp. 23-31. See also Exhibit B-11 to Defendant's MSJ, Docket Entry No. 21-7; and Barrick Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 21-2, p. 2 ¶ 6 ("On or around May 15, 2015, as part of Weatherford's performance appraisal process, Jahn sent [plaintiff] a performance appraisal with performance objectives.").

[6]Plaintiff's Deposition, pp. 143:14-146:3, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 32-35. See also Exhibit B-12 to Defendant's MSJ, Docket Entry No. 21-8.

[7]Plaintiff's Deposition, pp. 149:19-24, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, p. 37.

stages.  Jahn explained to plaintiff that his performance would be monitored for the next thirty days, and that thereafter Jahn would decide the best course of action.  Jahn met with the plaintiff on a weekly basis to monitor his progress and address concerns.[8]

When the PIP expired on July 24, 2015, Jahn extended it for an additional thirty days, _i.e._, until August 24, 2015.[9]  The PIP Extension acknowledged that the plaintiff had made improvement, but stated that more was needed, specifically:

1.  Monitor priorities more closely: Some tasks could have been done in a different order to better meet timely expectation.  Creating a task overview list so we can discuss those things more efficiently would be one way to approach this area.

2.  Follow the guidance you received by the project engineer: While working on the nForm-whqx project, you have not yet completed this more complex zone 2 back panel as instructed by the project engineer.

3.  Focus first on the big picture of the project and then drill down to details.  You are currently researching the cable clamps for the nForm-whqx. It would be more effective to start by looking at the larger back panel and then looking at the details of the clamps.  Adopting this approach will help move a majority of the work forward in a timelier manner.  This will also improve project transparency.

---

[8]Plaintiff's Deposition, pp. 150:1-156:16, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 38-42.  See also PIP, Exhibit B-13 to Defendant's MSJ, Docket Entry Nos. 21-9 and 22-4.

[9]Plaintiff's Deposition, pp. 172:24-173:11, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 43-44.  See also Oral Deposition of Pam Barrick ("Barrick Deposition"), p. 108:2-10, Exhibit 6 to Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition"), Docket Entry No. 25-6, p. 8.

> Maintaining continuity in these areas is necessary for you to become a well-accepted team lead and your performance will be closely monitored in the areas identified in the plan and described above.[10]

The PIP Extension also warned the plaintiff that "[f]ailure to improve may result in further disciplinary action up to and including termination."[11]

In mid-August of 2015 plaintiff submitted a written complaint about Jahn through the defendant's internal complaint hotline alleging, _inter alia_, (1) that Jahn disregarded workplace safety issues and resented plaintiff for complaining about them, (2) that Jahn made disparaging remarks about Muslim customers who were slow to respond during the month of Ramadan, (3) that Jahn singled him out because he was a U.S. citizen and Jahn was not, (4) Jahn did not give him formal Creo training, and (5) Jahn intentionally placed him on a PIP during Ramadan out of bias for his religion.[12]

In response to the complaints of discrimination that the plaintiff lodged against Jahn, the defendant's Human Resource

---

[10]PIP — Extension, Exhibit B-17 to Defendant's MSJ, Docket Entry Nos. 21-10 and 22-5. _See also_ Plaintiff's Deposition, pp. 175:4-179:17, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 45-49.

[11]PIP — Extension, Exhibit B-17 to Defendant's MSJ, Docket Entry Nos. 21-10 and 22-5. _See also_ Plaintiff's Deposition, pp. 188:23-189:2, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 50-51.

[12]_See also_ Response to June 23 and July 24, 2015, PIPs, Exhibit B-21 to Defendant's MSJ, Docket Entry No. 21-11, pp. 3-7. Plaintiff's Deposition, pp. 208:9-22, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, p. 60 (acknowledging that he wrote and submitted the grievance).

Manager, Pamala Barrick, investigated the plaintiff's complaints, but after meeting with Jahn and several other employees was unable to substantiate the plaintiff's claims of discrimination.[13]   On September 9, 2015, Barrick reviewed her findings with the plaintiff and reminded him about the defendant's non-retaliation policy.[14]

On September 14, 2015, Jahn and plaintiff exchanged emails about drawings that plaintiff had not completed.[15]

On September 28, 2015, the defendant terminated the plaintiff's employment.[16]  When Barrick inquired "what the trigger [was] to terminate" the plaintiff, defendant's Human Resources Manager, David Dyer, responded, "He failed to meet requirements of his PIP, plus other circumstances."[17]

Jahn died in October of 2015.[18]

---

[13]Barrick Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 21-2, p. 1 ¶ 7.  See also Closing Meeting for Listen Up Case File #67H1154, Exhibit C to Defendant's MSJ, Docket Entry Nos. 21-13 and 22-7.

[14]Id.  See also Plaintiff's Deposition, pp. 256:6-22, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, p. 76; and Investigation Closing, Exhibit C to Defendant's MSJ, Docket Entry Nos. 21-13 and 22-7.

[15]Plaintiff's Deposition, pp. 256:24-259:9, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 77-79; and Exhibit B-24 to Defendant's MSJ, Docket Entry Nos. 21-12 and 22-6 (emails).

[16]Plaintiff's Deposition, p. 267:17-19, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, p. 80.

[17]Barrick Deposition, pp. 110:22-111:20, Docket Entry No. 25-6, p. 9.

[18]Barrick Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 21-2, p. 3 ¶ 10.

## II.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56.  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553-54 (1986)).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  Id.  If, however, the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id.  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  Little, 37 F.3d at 1075.

### III. __Analysis__

Plaintiff alleges that defendant discriminated against him on the basis of race (South-Asian), color (dark-skinned), national origin (Pakistani), and religion (Muslim) in violation of 42 U.S.C. § 1981, Title VII, and comparable provisions of the Texas Labor Code, by placing him on PIPs and terminating his employment, and by terminating his employment in retaliation for having complained about discrimination.[19] Defendant argues that it is entitled to summary judgment on all of plaintiff's claims because plaintiff is unable to present evidence capable of satisfying the elements for a prima facie case of discrimination or retaliation and because plaintiff is unable to present evidence capable of showing that the legitimate, non-discriminatory reason for which the defendant terminated his employment, _i.e._, poor performance and failure to meet the expectations for the position he held, was a pretext for discrimination or retaliation in violation of § 1981, Title VII, or the Texas Labor Code.[20] Plaintiff argues that Defendant's MSJ should be denied because the evidence establishes that his supervisor treated him differently than other employees working as engineers and retaliated against him after he complained about the supervisor's discriminatory treatment.[21]

---

[19]Original Complaint, Docket Entry No. 1, pp. 4-11 ¶¶ 20-64.

[20]Defendant's MSJ, Docket Entry No. 21, pp. 6-8.

[21]Plaintiff's Opposition, Docket Entry No. 25, pp. 6-7.

## A. Applicable Law

The Civil Rights Act of 1866 prohibits race discrimination in private and public contracts. 42 U.S.C. § 1981. Title VII protects individuals from discrimination by an employer based on the "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Section 21.051 [of the Texas Labor Code] is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability discrimination." <u>Mission Consolidated Independent School District v. Garcia</u>, 372 S.W.3d 629, 633 (Tex. 2012). Plaintiff may establish claims for employment discrimination and retaliation in violation of § 1981, Title VII, and § 21 of the Texas Labor Code by using direct evidence or by using the indirect method of proof set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973). <u>See</u> <u>Body by Cook, Inc. v. State Farm Mutual Automobile Insurance</u>, 869 F.3d 381, 386 (5th Cir. 2017), <u>cert. denied</u>, 138 S. Ct. 1009 (2018) ("The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims."); <u>Specialty Retailers, Inc. v. DeMoranville</u>, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam) ("Because one purpose of the Commission on Human Rights Act is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited as authority."). Because plaintiff argues that he has cited

"sufficient circumstantial evidence" to defeat Defendant's MSJ,[22] the McDonnell Douglas framework applies to his claims.

Plaintiff's initial burden under the McDonnell Douglas framework is to establish a prima facie case. 93 S. Ct. at 1824. If plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Id. The defendant may meet this burden by presenting evidence that would support a finding that unlawful discrimination and/or retaliation was not the cause of the employment action. If the defendant meets this burden, the plaintiff must adduce evidence that the defendant's articulated reason is false and is, instead, merely a pretext for discrimination and/or retaliation. Id. at 1825. If plaintiff can raise a genuine issue of material fact as to pretext, he can avoid summary judgment. Plaintiff may also avoid summary judgment on his discrimination claims by presenting evidence that the defendant's reason for its actions, while true, is only one of the reasons for its conduct, and that another "motivating factor" was the plaintiff's protected characteristic(s). See University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2526 (2013). To avoid summary judgment on his retaliation claims plaintiff must cite evidence capable of establishing that the defendant would not have taken the adverse action but for his

---

[22]Id. at 7.

protected activity.  Id. at 2534.  See also Hernandez v. Yellow
Transportation, Inc., 670 F.3d 644, 657, 660 (5th Cir.), cert.
denied, 133 S. Ct. 136 (2012); Navy v. College of the Mainland, 407
S.W.3d 893, 901-02 (Tex. App. — Houston [14th Dist.] 2013, no pet.).

**B.  Application of the Law to the Undisputed Facts**

  1.  Plaintiff's Discrimination Claims Fail.

Defendant argues that it is entitled to summary judgment on
plaintiff's discrimination claims because plaintiff is unable to
establish a prima facie case with respect to those claims.
Alternatively, defendant argues that plaintiff was terminated for
the legitimate, non-discriminatory reason of poor performance, and
that plaintiff is unable to present evidence capable of showing
either that the defendant's reason for terminating his employment
was not true or that it was a pretext for discrimination.[23]

  (a)  Plaintiff Fails to Establish a Prima Facie Case.

A prima facie case of discriminatory termination requires a
showing that the plaintiff (1) was a member of a protected class;
(2) was qualified for the position he held; (3) suffered an adverse
employment action; and (4) was treated less favorably than
similarly situated employees who were not members of his protected
class(es).  See Alkhawaldeh v. Dow Chemical Co., 851 F.3d 422, 426
(5th Cir. 2017) (citing McDonnell Douglas, 93 S. Ct. at 1824).  See

_____

[23]Defendant's MSJ, Docket Entry No. 21, pp. 6-8.

also Paske v. Fitzgerald, 785 F.3d 977, 985 (5th Cir.), cert. denied, 136 S. Ct. 536 (2015).

Defendant does not dispute that plaintiff has satisfied three of the four elements required to establish a prima facie case of discrimination based on race, color, national origin, and religion, i.e., plaintiff belongs to four protected classes (South-Asian, dark-skinned, Pakistani-born, and Muslim), plaintiff was minimally qualified for his position, and plaintiff suffered an adverse employment action when the defendant terminated his employment.[24] Defendant argues that plaintiff cannot establish a prima facie case of discrimination because he cannot demonstrate that he was treated less favorably than other similarly-situated employees who were outside of his protected classes.[25]

> The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant.

Alkhawaldeh, 851 F.3d at 426. See also Paske, 785 F.3d at 985 ("To establish the fourth element, [plaintiff must] show, inter alia, that his 'conduct that drew the adverse employment decision [was]

---

[24]Defendant's MSJ, Docket Entry No. 21, p. 13 & n.4.

[25]Id.

"nearly identical" to that of the proffered comparator . . .'"). Defendant argues that plaintiff is unable to satisfy the fourth element of a prima facie case because he testified at his deposition that he is not aware of any other employee placed on a PIP by Jahn who was treated more favorably than he or who was not discharged.[26] Defendant also argues that plaintiff was, in fact, "treated _more_ favorably than another employee outside of [his] protected class (Don Fisher) because Jahn terminated Fisher's employment thirty days after commencing his PIP and never even granted Fisher an extension of the PIP."[27]

Plaintiff responds that he was treated less favorably than other engineers working for the defendant because despite being told he would be trained on key software needed to perform his job, _i.e._, Creo, "he was only provided '2 hours' of informal training, not by a trainer, but by a co-worker engineer."[28] Plaintiff argues that "[t]his difference in treatment negatively affected the conditions of his employment and ultimately led to his termination in September 2015."[29] But missing from the summary judgment record is evidence identifying any co-worker engineer who received better

---

[26]Defendant's MSJ, Docket Entry No. 21, p. 14 (citing Plaintiff's Deposition, 245:22-247:10, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 73-75).

[27]Id. (citing Barrick Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 21-2, p. 2 ¶¶ 8-9).

[28]Plaintiff's Opposition, Docket Entry No. 25, pp. 12-13.

[29]Id.

or even different training on Creo or any other relevant software than plaintiff received. Moreover, plaintiff's argument contradicts his deposition testimony that in addition to the two hours of training that he received from a co-worker, he received nearly one dozen training courses and modules,[30] and he did not know of any other engineers who received formal training[31] or who were not discharged after being placed on a PIP.[32] Because plaintiff has failed to submit any evidence from which a reasonable fact-finder could conclude that he was treated less favorably than similarly situated employees outside of his protected classes with respect either to the type or amount of training that he received, plaintiff has failed to satisfy the fourth prong of his prima facie case of discrimination under § 1981, Title VII, and Texas Labor Code. Thus, plaintiff's discrimination claims fail as a matter of law. See Alkhawaldeh, 851 F.3d at 427; Paske, 785 F.3d at 985.

> (b) Defendant States a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment.

Citing Faruki v. Parsons S.I.P., Inc., 123 F.3d 315 (5th Cir. 1997), defendant argues that even if plaintiff could establish a prima facie case of discriminatory termination that it is still entitled to summary judgment on plaintiff's discrimination claims

---

[30]Plaintiff's Deposition, pp. 109:8-110:14 and 116:11-119:19, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 8-9 and 12-15.

[31]Id. at 188:3-22, p. 50.

[32]Id. at 245:22-247:10, pp. 73-75.

because it has "articulated a legitimate, nondiscriminatory reason for [plaintiff's] termination, namely, [plaintiff's] failure to meet the expectations for his position."[33] In <u>Faruki</u> the Fifth Circuit recognized poor job performance as a legitimate, non-discriminatory reason for termination of employment. <u>Id.</u> at 320. Defendant has thus articulated a legitimate, non-discriminatory reason for terminating the plaintiff's employment.

        (c)    Plaintiff Fails to Raise a Fact Issue as to Pretext.

Defendant argues that plaintiff is unable to cite evidence capable of establishing that its stated reason for terminating his employment is a pretext for discrimination because the plaintiff cannot cite any evidence from which a reasonable fact-finder could conclude either that the defendant's stated reason for terminating his employment was false or that animus for his race, color, national origin, or religion was a motivating factor in the decision to terminate his employment.[34]

Citing the July 24, 2015, PIP Extension, plaintiff argues that defendant's stated reason for his discharge, <u>i.e.</u>, "that he 'failed

---

    [33]Defendant's MSJ, Docket Entry No. 21, p. 14. <u>See also</u> Defendant's Reply in Support of Its Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 27, p. 4; and Barrick Deposition, pp. 110:22-111:20, Docket Entry No. 25-6, p. 9 (stating that when she inquired "what the trigger [was] to terminate" the plaintiff, defendant's Human Resources Manager, David Dyer, responded, "He failed to meet requirements of his PIP, plus other circumstances.").

    [34]<u>Id.</u> at 15.

to satisfy the PIP' falls flat because the Defendant's own documentation shows that Plaintiff improved his performance after being placed on the first PIP in June 2015."[35] But missing from the summary judgment record is any evidence from which a reasonable fact-finder could conclude that plaintiff ever achieved the PIP's stated objectives, or that his level of performance ever met the defendant's expectations for his position. The July 24, 2015, PIP Extension that plaintiff cites as evidence that his performance improved following his placement on a PIP in June of 2015, also shows that Jahn extended the PIP at the end of the first thirty days because there were still "areas where continued focus and improvement is needed."[36] Accordingly, plaintiff has failed to present any evidence from which a reasonable fact-finder could conclude that defendant's stated reason for his termination was not true. Nor has plaintiff presented any evidence from which a reasonable fact-finder could conclude that the defendant's stated reason for terminating his employment was a pretext for discrimination based on race, color, national origin, or religion.

Plaintiff's Original Complaint asserts discrimination claims based on his race (South-Asian) and color ("dark-colored skin"), but plaintiff testified at his deposition that he "does not know"

---

[35]Plaintiff's Opposition, Docket Entry No. 25, pp. 14-15 (citing July 24, 2015, PIP Extension Memo, Exhibit B-17 to Defendant's MSJ, Docket Entry No. 22-5).

[36]See July 24, 2015, PIP Extension Memo, Exhibit B-17 to Defendant's MSJ, Docket Entry No. 22-5, p. 2.

whether he even believes that he was discriminated against based on his race or color and acknowledged that he had no basis for asserting those claims.[37] As to claims that defendant discriminated against him on the basis of his national origin (Pakistani) and religion (Muslim), plaintiff alleges that Jahn denied his requests for extensions for delivery of projects when he was unable to meet initial deadlines but that Jahn granted similar requests from non-Pakistani and non-Muslim individuals, that he overheard Jahn say that Muslim clients are slow to respond and sluggish during the Islamic holy month of Ramadan, and that during a visit to plaintiff's office Jahn alluded to plaintiff being an outsider in America.[38] Plaintiff also argues that the defendant "ratified and supported [Jahn's] discriminatory behavior by its sham investigation" of the complaint he made against Jahn.[39] But missing from the record is evidence identifying any non-Pakistani or non-Muslim co-worker who received either an extension for delivery of a project after failing to meet initial deadlines or a more thorough investigation of a complaint of discrimination. Also missing is evidence from which a reasonable jury could conclude that Jahn's comments were more than stray remarks incapable of raising a genuine issue of material fact for trial.

---

[37]Plaintiff's Deposition, pp. 241:7-245:16, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 69-73.

[38]Original Complaint, Docket Entry No. 1, p. 2 ¶¶ 11-13 and 15.

[39]Plaintiff's Opposition, Docket Entry No. 25, p. 13.

Under Fifth Circuit precedent

> comments are evidence of discrimination only if they are
> "1) related to the protected class of persons of which
> the plaintiff is a member; 2) proximate in time to the
> complained-of adverse employment decision; 3) made by an
> individual with authority over the employment decision at
> issue; and 4) related to the employment decision at
> issue." Comments that do not meet these criteria are
> considered "stray remarks," and standing alone, are
> insufficient to defeat summary judgment.

Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 380 (5th Cir.

2010) (citations omitted). Jahn's alleged comments about Muslim

clients and plaintiff being an outsider in America are the only

evidence that plaintiff cites in support of his claims for

religious and national origin discrimination, respectively.

Moreover, plaintiff has not cited any evidence capable of

establishing that the comments attributed to Jahn were related to

the decision to terminate his employment. These comments are

therefore stray remarks that are not legally sufficient to raise a

fact issue as to pretext. See Scales v. Slater, 181 F.3d 703, 712

(5th Cir. 1999) ("Stray remarks with no connection to an employment

decision cannot create a fact issue regarding discriminatory intent

and are insufficient to defeat summary judgment."). Thus plaintiff

has failed to cite evidence capable of establishing that the

defendant's legitimate, non-discriminatory reason for terminating

his employment was a pretext for discrimination based on race,

color, national origin, or religion.

2.   Plaintiff's Retaliation Claims Fail.

Defendant argues that plaintiff cannot prove that defendant

retaliated against him for complaining about discrimination by

terminating his employment because plaintiff cannot establish a prima facie case of retaliation and cannot cite facts capable of establishing that defendant's legitimate, non-discriminatory reason for terminating his employment was a pretext for retaliation.[40] Plaintiff argues that he has adduced sufficient evidence to establish a prima facie case of retaliation and to raise a genuine issue of material fact as to whether defendant's proffered reason for his termination was a pretext for retaliation.[41]

A prima facie case of retaliation requires the plaintiff to prove that: (1) he participated in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between his protected activity and the adverse action. See Hernandez, 670 F.3d at 657. See also Navy, 407 S.W.3d at 900 (recognizing that under the § 21.055 of the Texas Labor Code an employer commits an unlawful employment practice if it retaliates against an employee who: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing). Once the plaintiff makes a prima facie case of retaliation, the burden shifts to the employer to "provide a 'legitimate, non-retaliatory reason for the adverse employment action.'" Hernandez, 670 F.3d at 657. See also

_____

[40]Defendant's MSJ, Docket Entry No. 21, pp. 17-19.

[41]Plaintiff's Opposition, Docket Entry No. 25, pp. 13-16.

Navy, 407 S.W.3d at 900 (same).  The burden then shifts back to the employee to prove that the protected conduct was the but for cause of the adverse employment decision.  Hernandez, 670 F.3d at 657. See also Navy, 407 S.W.3d at 900-01 (same).

(a)  Plaintiff Establishes a Prima Facie Retaliation Case.

The parties do not dispute that plaintiff has satisfied the first two prongs of a prima facie case of retaliation, i.e., the plaintiff complained via the defendant's internal complaint hotline that Jahn was discriminating against him, and he suffered an adverse action when the defendant terminated his employment. Quoting Roberson v. Alltel Information Services, 373 F.3d 647, 655 (5th Cir. 2004), defendant argues that "'the mere fact that some adverse [employment] action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case.'"[42]

Roberson stands for the principle that temporal proximity alone is not sufficient to establish a retaliation claim.  The Roberson court made clear, however, that temporal proximity alone was not enough only when analyzed in conjunction with the defendant's legitimate, non-discriminatory reason, which was a company-wide reduction-in-force.  Id. at 655-56.  Defendant termi- nated plaintiff's employment for poor performance, and the Fifth

---

[42]Defendant's MSJ, Docket Entry No. 21, p. 18.

Circuit has long held that in such circumstances close timing between protected activity and adverse action may be sufficient evidence of a causal connection to establish a prima facie case. See McCoy v. City of Shreveport, 492 F.3d 551, 561 n.28 (5th Cir. 2007) (per curiam) (citing Swanson v. General Services Administration, 110 F.3d 1180, 1188 (5th Cir.), cert. denied, 118 S. Ct. 366 (1997)). See also Clark County School District v. Breeden, 121 S. Ct. 1508, 1511 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). It is undisputed that the plaintiff engaged in protected activity by filing a complaint against his supervisor, Jahn, in mid-August of 2015 and that plaintiff experienced an adverse employment action when the defendant terminated his employment on September 28, 2015. The very close temporal proximity between the plaintiff's protected activity and the defendant's decision to terminate his employment is sufficient to establish a prima facie case of retaliation. See Breeden, 121 S. Ct. at 1511.

> (b) Defendant States a Legitimate, Non-Discriminatory
> Reason for Terminating Plaintiff's Employment.

For the reasons stated in § III.B.1(b) the defendant has stated a legitimate, non-discriminatory reason for terminating

plaintiff's employment, "namely, [plaintiff's] failure to meet the expectations for his position."[43]

> (c) Plaintiff Fails to Raise a Fact Issue as to Whether Defendant's Legitimate, Non-Discriminatory Reason for His Termination was a Pretext for Retaliation.

Asserting that Jahn began having performance discussions with the plaintiff in May of 2015, placed him on a PIP in June of 2015, and extended the PIP in July of 2015, and that all of these actions pre-dated the complaint that plaintiff filed against Jahn in mid-August of 2015, defendant argues that the plaintiff cannot cite any evidence capable of establishing that its legitimate, non-discriminatory reason for terminating the plaintiff's employment was a pretext for retaliation.[44] Defendant argues that "[a]part from his rank speculation, [plaintiff] simply has no evidence that his complaint was a 'but for' cause of his termination."[45]

Citing the July 24, 2015, PIP Extension, plaintiff argues that defendant's stated reason for his discharge, i.e.,

> that he "failed to satisfy the PIP" falls flat because the Defendant's own documentation shows that Plaintiff

---

[43]Defendant's MSJ, Docket Entry No. 21, p. 14. See also Defendant's Reply, Docket Entry No. 27, p. 4; and Barrick Deposition, pp. 110:22-111:20, Docket Entry No. 25-6, p. 9 (stating that when she inquired "what the trigger [was] to terminate" the plaintiff, defendant's Human Resources Manager, David Dyer, responded, "He failed to meet requirements of his PIP, plus other circumstances.").

[44]Defendant's MSJ, Docket Entry No. 21, pp. 18-19.

[45]Id. at 19.

> improved his performance after being placed on the first
> PIP in June 2015. It was not until after he filed his
> grievance, and after Ms. Barrick's post-discrimination
> grievance investigation wrapped up that, just seven days
> later, Defendant placed him on another PIP and then
> promptly terminated him without any mention of the reasons
> he allegedly failed to meet the requirements of that final
> PIP. Viewed in conjunction with David Dyer's admission
> that "other circumstances" played a role in his
> termination, a jury can reasonably conclude that the
> state[d] reasons for his termination are a pretext for
> retaliation for him filing a discrimination grievance.[46]

For the reasons stated in § III.B.1(c), above, the court has already concluded that plaintiff has failed to cite evidence capable of establishing that the defendant's stated reasons for terminating his employment were false.

Close timing between an employee's protected activity and an adverse action against him is sufficient to provide the causal connection required to make out a prima facie case of retaliation, but is not sufficient to establish retaliatory motive once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing. In such cases plaintiffs must offer some evidence from which the jury may infer that retaliation was the real motive. Plaintiff has offered no such evidence; and even assuming that he had, the court concludes that such evidence is overcome by the undisputed evidence that plaintiff's termination was the direct result of his performance issues, which began months before he filed his complaint against

---

[46]Plaintiff's Opposition, Docket Entry No. 25, pp. 14-15 (citing July 24, 2015, PIP Extension Memo, Exhibit B-17 to Defendant's MSJ, Docket Entry No. 22-5).

Jahn and continued into September of 2015 as evidenced by the emails that plaintiff exchanged with Jahn on September 14, 2015, about drawings that Jahn had requested but plaintiff had not completed.[47] The Supreme Court recognized that employers need not suspend operations upon discovering that an individual has engaged in protected activity, and that "their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Breeden, 121 S. Ct. at 1511.

As a matter of law, temporal proximity alone is not sufficient to prove a causal link connecting protected activity and an adverse employment action. Hernandez, 670 F.3d at 660 ("'But for' . . . causation cannot be established by temporal proximity alone."). Temporal proximity may only create a genuine dispute of material fact on the issue of but-for causation if the employee also introduces other probative evidence of pretext. Id. The only other evidence of pretext to which plaintiff points is the statement that David Dyer, the defendant's Human Resources Manager, made to Barrick about the reason for terminating the plaintiff's employment, i.e., "[h]e failed to meet requirements of his PIP, plus other circumstances."[48] Plaintiff argues that the phrase,

---

[47]See Exhibit B-24 to Defendant's MSJ, Docket Entry Nos. 21-12 and 22-6. See also Plaintiff's Deposition, pp. 256:24-259:9, Exhibit B to Defendant's MSJ, Docket Entry No. 21-3, pp. 77-79 (acknowledging that Jahn was not happy about plaintiff's failure to have completed drawings that he had been asked to complete).

[48]Barrick Deposition, pp. 110:22-111:20, Docket Entry No. 25-6, p. 9.

"**'PLUS other circumstances'** is as close to an admission of retaliatory discharge that one can write without actually admitting in writing that 'yes, we got rid of him because he complained about discrimination.[']"[49]   Assuming, without deciding, that Dyer's statement to Barrick was sufficient to raise an inference that plaintiff's complaint about Jahn was an other circumstance considered in deciding to terminate his employment, the court nevertheless concludes that the defendant is entitled to summary judgment on the plaintiff's retaliation claims because Dyer's statement does not create a genuine dispute of material fact that, but for the plaintiff's complaints about Jahn's alleged discrimination, he would not have been terminated. See Hernandez, 670 F.3d at 657.   For example, the September 14, 2015, email exchange between Jahn and the plaintiff shows that in mid-September Jahn directed the plaintiff to complete drawings that plaintiff not only failed to complete, but also show that the plaintiff argued with Jahn about the process for doing so.   The record shows that this conduct and plaintiff's well-documented inability to follow the process that Jahn directed him to follow for completing his drawing assignments are what precipitated his termination.   The court concludes therefore that there is no genuine dispute on the issue of but-for causation, and that the defendant is entitled to summary judgment on the plaintiff's retaliation claims.   See

---

[49]Plaintiff's Opposition, Docket Entry No. 25, p. 11.

<u>Manaway v. Medical Center of Southeast Texas</u>, 430 F. App'x 317, 324-25 (5th Cir. 2011) (per curiam) (affirming grant of summary judgment where the employer similarly had other documented reasons for terminating the plaintiff's employment); <u>Nunley v. City of Waco</u>, 440 F. App'x 275, 281 (5th Cir. 2011) (per curiam) (same).

## IV.  <u>Conclusions and Order</u>

For the reasons stated in § III, above, Defendant's Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED.**  Because the court has granted the Defendant's Motion for Summary Judgment, the Defendant's Motions in Limine (Docket Entry No. 28) **are DENIED as MOOT**.

**SIGNED** at Houston, Texas, on this the 21st day of May, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE